## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DEON BAILEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:20-cv-00802-GCS** |
| | ) | |
| **KIMBERLY M. SCHNEIDER AND** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM & ORDER</u>

**SISON, Magistrate Judge:**

Pending before the Court is Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies under the Federal Tort Claims Act and the Prison Litigation Reform Act. (Doc. 25). Defendants filed their Motion for Summary Judgment on July 9, 2021. *Id.* Plaintiff filed a timely response to Defendants' Motion on August 12, 2021. (Doc. 31). On May 19, 2022, the Court held a hearing on the Motion where Plaintiff was provided with an additional 30 days to supplement his response to Defendants' Motion. (Doc. 48). Plaintiff filed his Supplemental Response in Opposition to Defendants' Motion on June 17, 2022. (Doc. 50). Defendants filed a Reply to Plaintiff's Response in Opposition on June 29, 2022. (Doc. 52). On August 30, 2022, the Court held another hearing on the Motion. (Doc. 58). The Court held a final hearing on the Motion on October 19, 2022. (Doc. 61). For the reasons delineated below, the Court **GRANTS** Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies.

## PROCEDURAL HISTORY

Plaintiff Deon Bailey is currently an inmate in the United States Federal Bureau of Prisons ("BOP"), who is currently incarcerated at Coleman I United States Penitentiary in Coleman, Florida. On August 19, 2020, Plaintiff brought this suit against Correctional Officer Bauer ("Bauer"), Correctional Officer Wilson ("Wilson"), PA-C Kimberly Schneider ("Schneider"), Inmate Nathan Minard ("Minard"), the United States Department of Justice ("DOJ") and the BOP. (Doc. 1). Plaintiff alleges violations of his constitutional rights by persons acting under the color of federal authority in connection with a fellow inmate's attack on him. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He also seeks relief pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b); 28 U.S.C. § 2671 *et. seq.* Plaintiff's claims relate to the period in and around June 21, 2020, when he was housed in Cell #130 at FCI Greenville in Greenville, Illinois.[1] (Doc. 1).

In his Complaint, Plaintiff alleges that the DOJ, BOP and Defendant Wilson were negligent in failing to protect him from an inmate attack initiated by Minard on June 21, 2020. (Doc. 1, p. 14). Plaintiff further alleges that the DOJ, BOP and Defendant Schneider were negligent for denying him medical care for the injuries he sustained from the attack. *Id.* at p. 15. Lastly, Plaintiff alleges negligence on the part of the DOJ and BOP because

---

[1]     Plaintiff was sentenced in the Northern District of Iowa to a 295-month term of imprisonment and a three-year term of supervised release for Distribution of Cocaine Base. (Doc. 25, Exh. A., p. 2). Plaintiff's projected release date is August 31, 2036. *Id.* From December 17, 2018, to December 3, 2020, Plaintiff was confined at the Federal Correctional Institution located in Greenville, Illinois ("FCI Greenville"). Plaintiff was then confined at the United States Penitentiary in Bruceton Mills, West Virginia ("USP Hazelton") from approximately December 3, 2020, to approximately April 18, 2022, when he was transferred to the United States Penitentiary in Coleman, Florida ("USP Coleman I").

they housed him in a cell with an inoperative emergency distress button. *Id*. at p. 14, 17.

On April 30, 2020, the Court completed its preliminary review of Plaintiff's Complaint

pursuant to 28 U.S.C. § 1915A. (Doc. 15). The Court construed Plaintiff's allegations in

the following counts:

> **Count 1: Eighth Amendment claim against Bauer and Wilson for failing to protect Plaintiff from Minard's attack.**
>
> **Count 2: Federal Tort Claim against the DOJ/BOP for negligently allowing the attack on Plaintiff, for exposing him to COVID-19, and for housing him in Cell #130 with an inoperative emergency distress button.**
>
> **Count 3: Eighth Amendment deliberate indifference claim against Schneider for failing to provide Plaintiff with pain treatment or follow-up care for the injuries inflicted by Minard.**
>
> **Count 4: Federal Tort Claim against the DOJ/BOP for medical malpractice and/or negligence for failing to provide Plaintiff with pain treatment or follow-up care for the injuries inflicted by Minard.**

(Doc. 15, p. 5). Counts 2, 3, and 4 of Plaintiff's Complaint survived preliminary review.

*Id*. at p. 12. Count 1 of Plaintiff's Complaint was dismissed without prejudice.[2] *Id*. The

United States of America was also added as a Defendant for the FTCA claims (Counts 2

and 4); the DOJ and BOP were terminated as Defendants. *Id*.

---

[2]    Defendants Bauer and Wilson were dismissed without prejudice (Doc. 15, p. 12). As to Bauer, Plaintiff failed to allege that he sought protection from Minard in relation to the drug transaction that brought about the attack. *Id*. at p. 7. As to Wilson, the Court determined that Wilson's lack of action to prevent the inmate attack and Wilson ignoring information regarding Plaintiff's cooperation in a related criminal case had no casual relationship. Further, Plaintiff did not allege that he suffered from any physical harm on account of Wilson's failure to act. *Id*. Defendant Minard was dismissed with prejudice because Plaintiff cannot maintain a federal civil rights action or a FTCA claim against a fellow inmate because Minard is not a federal employee or a person who acted under the color of federal authority. *Id*. at p. 4.

BACKGROUND

Plaintiff is pursuing relief through two separate legal remedies – the FTCA (28 U.S.C. §§ 1346, 2671-2680) and a *Bivens* Claim. (Doc. 1). Each of these remedies require Plaintiff to meet separate exhaustion criteria prior to filing suit. Therefore, the grievances relevant to each procedure will be reviewed in turn. Testimony and evidence presented relevant to both claims will then be discussed.

**A.    Documented Grievances Relevant to Plaintiff's FTCA Claims.**

Plaintiff asserts that a form titled "Small Claims for Property Damage or Loss (31 U.S.C. § 3723)" was submitted for the purpose of pursuing exhaustion under the FTCA. (Doc. 50, p. 1). The form is dated June 30, 2020, and documents the incident that occurred on June 25, 2020. (Doc. 1, p. 9). In the form, Plaintiff conveys the following:

> On the property of Greenville F.C.I, I was assaulted and injured by an inmate. The inmate claimed I owed him money. I told my family brother to send him $50.00 on the email system. This wasn't enough so he told me [$]1,000 . . . . He claimed I owed him for drugs. I did not have the money, so he came to my cell and busted my head . . . He bit my right thumb [and] injured my back – lower and upper. Damage[d] my left and right pinky fingers. Injured my legs. Caused my hernia also damage. Also damaged my brain mentally. I am experiencing pain and suffering. I have headaches and migraines and most of all my back and hernia. My left wrist and right thumb and pinky are in pain . . . . My neck is also injured.

*Id.* The document also contains information regarding property that was stolen or damaged during the June 25th incident. *Id.* Plaintiff indicated that the claim for damages amounted to $500,000.[3] Plaintiff also listed his cellmate, Calvin Williams and Nurses

---

[3]    Item 7 of the form indicates that the amount requested should reflect "the damage to, or loss of, privately owned property." (Doc. 1, p. 9).

Williams and Kelly as witnesses to the June 25th incident.[4] *Id.* Lastly, Plaintiff identified the North Central Regional Office (located at 400 State Avenue, Tower II, Suite 800, Kansas City, KS 66101) as the appropriate regional office to which the claim should be delivered. *Id.*

**B.    Documented Grievances Relevant to Plaintiff's *Bivens* Claim.**

The SENTRY Report provided by Defendants, indicates that Plaintiff submitted a total of twelve remedy requests during his time at FCI Greenville. (Doc. 25, Exh. 6, p. 4-9). The additional four remedy requests recorded in the SENTRY Report pertain to Plaintiff's time at another correctional institution. *Id.* at p. 1-4. Of those twelve requests, five were submitted after the June 25, 2020, incident. *Id* at p. 7-9.

Plaintiff's first grievance dated June 28, 2020, was received at the regional level on July 1, 2020. (Doc. 1, p. 8; Doc. 25, Exh. 2, p. 4). Plaintiff's grievance was assigned Remedy No. 1033217-R1. (Doc. 25, Exh. 2, p. 4). Plaintiff identified his grievance as sensitive in nature because it "concerned confidential information." (Doc. 1, p. 8). In the grievance, Plaintiff asserted that he was threatened with an incident report if he did not return to the compound after the June 25th inmate attack. *Id.* Plaintiff indicated that he had informed officers about "rumors being spread about him" that he believed would further jeopardize his safety. *Id.* Plaintiff also recounted the June 25th incident indicating that the inmate who had attacked him "was out of place of assignment and that it was not his turn to be out of his cell due to modified Covid-19 operations." *Id.* As such, Plaintiff "did

---

[4]    A third nurse is also listed as a witness. However, the name is illegible. (Doc. 1, p. 9).

not understand how the attacker got out of his cell." *Id.* He concluded the grievance by asking the regional office to "please recommend transfer so [he would not] get killed." *Id.* The grievance was deemed non-sensitive and rejected at the regional level on July 15, 2020. (Doc. 25, Exh. 6, p. 7). Plaintiff was advised to submit his grievance at the institutional level, which is reflected in the status codes "INS" and "RSR." *Id.* According to the SENTRY Report, Plaintiff neither appealed this finding to the Central Office nor filed a grievance at the institutional level as instructed. (Doc. 25, Exh. 2, p. 4).

Plaintiff's next grievance, dated July 3, 2020, was received at the regional level on July 9, 2020. (Doc. 1, p. 11; Doc. 25, Exh. 2, p. 4). Plaintiff's grievance was assigned Remedy No. 1032595-R1. (Doc. 25, Exh. 2, p. 4). Plaintiff identified his grievance as sensitive in nature because it concerned "staff bias." (Doc. 1, p. 11). In the grievance, Plaintiff asserted that the incident report issued regarding the June 25, 2020, inmate attack contained "untrue statements." *Id.* Particularly, Plaintiff noted that he was "not wrestling" and that he was "trying to protect [himself] from being attacked." *Id.* Further, Plaintiff stated that, "along with the DHO Packet" he received incident reports for intoxicants, drugs, narcotics, and alcohol that all came back negative. *Id.* Lastly, he noted that the "DHO took days from m[y] phone, visits, commissary, all my privileges." *Id.* He also requested that the regional office "please get [him] away [from Greenville.]" *Id.* Plaintiff's remedy request was described by the regional office as "involving a DHO appeal" and was rejected on July 13, 2020. (Doc 25, Exh. 6, p. 7). The comments related to the rejection stated that Plaintiff "must submit one BP10 for each incident report you are appealing. Full DHO reports are required to prove timeliness." *Id.* The code "RSR" contained in the

SENTRY report indicated that Plaintiff was advised he could re-submit a corrected request. *Id.* The SENTRY report further reflected that no corrected grievance was received at the regional office. *Id.*

Plaintiff's third grievance was also received at the regional office on July 9, 2020. (Doc. 25, Exh. 2, p. 4). Plaintiff's grievance was assigned Remedy No. 1033428-R1 and concerned complaints of staff misconduct. (Doc. 25, Exh. 6, p. 8). The grievance was deemed non-sensitive and rejected. *Id.* Plaintiff was advised to submit his grievance at the institutional level, which is reflected in the status codes "INS" and "RSR". *Id.* According to the SENTRY report, Plaintiff neither appealed this finding to the Central Office nor did he file a grievance at the institutional level. *Id.*

Plaintiff's fourth grievance was received at the regional office on November 12, 2020. (Doc. 25, Exh. 2, p. 5). Plaintiff's grievance was assigned Remedy No. 1059439-RI and concerned complaints of staff misconduct. (Doc. 25, Exh. 6, p. 8). The grievance was deemed non-sensitive and rejected on July 16, 2020. *Id.* Plaintiff was advised to submit his grievance at the institutional level, which is reflected in the status codes "INS" and "RSR". *Id.* According to the SENTRY report, Plaintiff neither appealed this finding to the Central Office nor did he file a grievance at the institutional level. *Id.*

Plaintiff's final grievance was received at the regional office on November 16, 2020. (Doc. 25, Exh. 2, p. 5). Plaintiff's grievance was assigned Remedy No. 1057198-R1 and concerned a transfer request. (Doc. 25, Exh. 6, p. 8). The grievance was rejected, and the comments related to the rejection advised Plaintiff that he "must have a BP9 prior to submitting at the regional level." (Doc. 25, Exh. 6, p. 8). Instead of submitting the

grievance at the institutional level, Plaintiff submitted the grievance at the regional level again on or around December 21, 2020. *Id.* at p. 9.

**C.    Evidence Presented Regarding the Processing of Mail at FCI Greenville.**

During the hearings, Plaintiff indicated that he "tried his best" to properly exhaust his administrative remedies for both the FTCA claims and the *Bivens* claim. *See* (Doc. 50, p. 1). Plaintiff testified that he was housed in the Special Housing Unit ("SHU") while he was filing grievances regarding the June 25, 2020, inmate assault. *Id.* Plaintiff testified that it was not always possible to get the correct BP form to submit grievances while being housed in the SHU. *Id.* Plaintiff also indicated that he attempted to submit informal grievances at the facility level, but that his attempts had repeatedly failed. *Id.*

Paul Foster[5], a Paralegal Specialist with the BOP in the North Central Regional Office[6], testified regarding the submission process for administrative tort claims under the FTCA. Foster indicated that the BOP maintains records of such claims in an electronic database referred to as "Content Manager – Administrative Torts" ("Content Manager"). Foster stated that he ran the Content Manager with Plaintiff's name and inmate number on August 29, 2020. The search returned no results. Foster stated that this was indicative of Plaintiff never having filed a proper claim with the BOP. Foster also stated that Plaintiff

---

[5]    Defendants supplied the Court with a written declaration from Paul Foster. (Doc. 52, Exh 1). Mr. Foster's testimony is consistent with the information contained in his declaration.

[6]    Defendants also supplied the Court with a written declaration from Johnna Todd, another Paralegal Specialist with the BOP in the North Central Regional Office. Ms. Todd's declaration is consistent with Mr. Foster's testimony provided in Court. (Doc. 25, Exh. 1).

could have contacted the office about not receiving any documentation regarding the alleged denial of his claims.

Danielle Matz[7], a Warden's Secretary / Administrative Remedy Clerk employed by the BOP at FCI Greenville[8], first testified regarding the submission process for grievances governed by the Prison Litigation Reform Act ("PLRA"). The PLRA governs the exhaustion process for Plaintiff's *Bivens* claim. Matz explained the three levels of the administrative grievance process and noted that each phase had a coordinating form.[9] Matz stated that for an inmate to fully exhaust, they must timely and properly proceed through all 3 levels of the grievance process. Further, Matz described the documentation system, called SENTRY, which is used at the institutional level to process grievances. Matz ran Plaintiff's name and inmate number in the SENTRY system which showed that Plaintiff never filed a remedy at the last level, *i.e.*, with the Central Office, during the period when Plaintiff was complaining about the June 25th, 2020, inmate assault.

Ms. Matz later discussed the chain of custody for the mail going into and out of the facility at FCI Greenville. Matz noted that her role as the Warden's Secretary requires her to open the batch packages of mail that come into the facility. She sorts the mail and

---

[7]     Defendants supplied the Court with a written declaration from Danielle Matz. (Doc. 52, Exh. 2). Ms. Matz's testimony is consistent with the information contained in her declaration.

[8]     Defendants also supplied the Court with a written declaration from Krista Johnson, another Administrative Remedy Clerk with the BOP at FCI Greenville. Ms. Johnson's declaration is consistent with the testimony provided in Court by Ms. Matz. (Doc. 25, Exh. 2).

[9]     Matz explained that BP-9 forms are utilized when inmates file a request for a remedy at the institutional level. She further explained that BP-10 forms are utilized when an inmate is not satisfied with the response at the institutional level. BP-10's are sent as an appeal to the Regional Office. Matz indicated that BP-11's are utilized by an inmate when they are dissatisfied with the response at the Regional Office. BP-11's are sent as an appeal to the Central Office.

places any administrative responses or rejections into the coordinating unit team's mailbox so that the team can distribute the responses to the correct inmate. Matz indicated that daily each unit team's manager checks their mailbox for these responses. Lastly, Matz testified that an inmate may consider the absence of a response in the grievance process to be a denial at any level and that they could then proceed to the subsequent level of the grievance process.

Mary Cordell[10], a Regional Office Secretary employed by the BOP in the North Central Regional Office, testified about the grievance processing procedures for grievances that come to the North Central Regional Office. Cordell testified that she is responsible for sorting the mail that comes into and goes out of the North Central Regional Office. When the grievances come into the office, Cordell enters the grievances into the SENTRY system and ensures that they are viewed by the correct grievance department.  When the grievance responses are being sent back to inmates, she sorts the responses by facility and places them into batches. She also ensures that each grievance being returned is date stamped.

Shaun Allen[11], a Corrections Assistant Officer employed by the BOP at FCI Greenville, testified about the mail processing procedures at FCI Greenville. Allen indicated that he receives the inmate mail from the housing units and then takes it to the post office in downtown Greenville, where it is mailed to the appropriate recipient. Allen

---

[10]     Defendants supplied the Court with a written declaration from Mary Cordell. (Doc. 52, Exh. 4). Ms. Cordell's testimony is consistent with the information contained in her declaration.

[11]     Defendants supplied the Court with a written declaration from Shaun Allen. (Doc. 52, Exh. 7). Mr. Allen's testimony is consistent with the information contained in his written declaration.

stated that mail bags are picked up by the morning officers from each housing unit in the facility and are then secured in an office until 6:00 am, when it is picked up by Allen or another Corrections Assistant Officer to take to the local post office. The mail is dropped off between 7:30 – 8:00 am, and the incoming mail is picked up at that time. Allen stated that the incoming mail is then brought back to the facility for institutional processing and distribution. When the incoming mail arrives, Correctional Assistant Officers sort the mail into staff mail, inmate mail, and special legal mail. Special legal mail is placed in a log, and the unit team will distribute it to the appropriate inmate, who will then sign off that it was received. Batch mail is sent directly to the warden's office where it is processed. Outgoing mail is not processed in any log by the facility. Allen noted that, to his knowledge, there were no disruptions in the mail process from June of 2020 to December 2020 at FCI Greenville.

Defendants also supplied the Court with a written declaration from Kevin Seely. (Doc. 52, Exh. 5). Seely has been a Correctional Counselor at FCI Greenville since June 2013. *Id.* at p. 1. As part of his duties, Seely provides inmates with administrative remedy forms. *Id*. Seely noted that he had reviewed the SHU logs from May 31, 2020, June 27, 2020, August 9, 2020, and August 15, 2020. *Id.* at. p. 2. The SHU logs for July were not contained in the record. (Doc. 52, Exh. 6). Seely indicated that Unit Team staff members made their way through the SHU regularly and that inmates would have been provided with an administrative remedy form had they requested one. (Doc. 52, Exh. 5, p. 2).

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). *See also Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but instead is to determine whether a genuine issue of material fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is up to the Court to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity to exhaust should time still permit; exhaustion is not required, however, if the failure to exhaust was innocent.[12] *Id.*

---

[12] *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008)(noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809

at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id.*

## A.    FTCA Exhaustion Requirements

Counts 2 and 4 of Plaintiff's claim were brought pursuant to the FTCA. (Doc. 15, p. 5); 28 U.S.C. § 1346(b); 28 U.S.C. § 2671 *et. seq*. The FTCA permits an individual to bring suit in federal court against the United States

> . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [United States] Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. §1346(b)(1); *see also Dolan v. United States Postal Serv.,* 546 U.S. 481, 484-485 (2006). Pursuant to this provision, a federal inmate may bring suit for injuries sustained during incarceration due to the negligence of prison officials. *See United States v. Muniz,* 374 U.S. 150, 165 (1963). However, an inmate may not bring the lawsuit unless the inmate has first presented his claim to the appropriate federal agency and that agency has denied the claim. *See* 28 U.S.C. § 2675(a). Once an inmate has done so, he is said to have exhausted his administrative remedies for the claim. The purpose of requiring exhaustion is to provide the relevant agency with an opportunity to meaningfully consider and address the claim prior to the suit being filed. *See Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997*); Chronis v. United States*, 932 F.3d 544, 546 (7th Cir. 2019).

---

(7th Cir. 2006)(indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

An inmate seeking to bring a claim under the FTCA must first mail the appropriate administrative claim form to the Regional Office in the region where the claim occurred.[13] *See* 28 C.F.R. § 543.31(c). Once the claim form has been received, the claim will be referred to the proper institution for investigation; Regional Counsel will then review the investigation and issue a decision on all claims properly filed. *See* 28 C.F.R. §543.32 (c)-(d). If dissatisfied with the Regional Counsel's decision, or if the claim is denied, the inmate may request reconsideration of the claim from the BOP. *See* 28 C.F.R. § 543.32(g). If the inmate is dissatisfied with the final agency action, the inmate may then file suit with the district court. *Id.* The Regional Office has six months to respond to the claim; claims that have not been responded to within six months can be assumed to be denied and the inmate can file suit at that that time. *See* 28 C.F.R. § 543.32(i). An inmate's failure to exhaust his administrative remedies under the FTCA prior to suit mandates dismissal of those claims unless the United States waives the exhaustion defense. *See McNeil v. United States*, 508 U.S. 106, 112-113 (1993).

**B.    PLRA Exhaustion Requirements**

Count 3 of Plaintiff's claim is a *Bivens* claim, and its exhaustion is governed by the Prison Litigation Reform Act ("PLRA"). (Doc. 15, p. 5). Under the PLRA, which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail,

---

[13]    A claim under the FTCA is considered presented, and thereby exhausted, when the appropriate federal agency has received an executed Standard Form 95 or other written notification of an incident from the claimant that is accompanied with a request for monetary damages in a sum certain for the personal injury alleged to have occurred. *See* 28 C.F.R. § 14.2(a).

prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This comports with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, it affords prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

The exhaustion requirement under the PLRA applies to state and federal inmates alike. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate in the BOP, Plaintiff's exhaustion is governed by the Federal Bureau of Prison's Administrative Remedy Program. *See* 28 C.F.R. § 542.10. The

program applies "to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates" and allows them "to seek formal review of an issue relating to any aspect of his/her own confinement." *Id.*

Before initiating the formal grievance process, inmates are encouraged to seek informal resolution of their complaint by presenting it to a staff member. *See* 28 C.F.R. § 542.13. If the attempt at an informal resolution is unsuccessful, the inmate may then file an initial grievance with the warden within twenty days of the incident by submitting a BP-9 form. *See* 28 C.F.R. § 542.14. If the inmate is not satisfied with the disposition of the grievance, he may then appeal that grievance to the Regional Director using a BP-10 form. *See* 28 C.F.R. § 542.15. If this does not resolve the issue, the inmate may appeal to the General Counsel by submitting a BP-11 form. *Id.* The General Counsel has forty days to respond, but this deadline may be extended by twenty-days. *See* 28 C.F.R. § 542.18. After this time expires, the appeal is deemed denied. *Id.* Appeal to the General Counsel is considered the final level of the administrative remedies process. *Id.*

DISCUSSION

The Court will first consider Plaintiff's alleged failure to exhaust his administrative remedies under the FTCA for Counts 2 and 4. Defendants assert two arguments regarding why Plaintiff failed to meet the FTCA requirements for exhaustion. First, Defendants believe that Plaintiff failed to meet the presentment requirement of the FTCA because Plaintiff's submission to the Regional Office was not sufficiently detailed as to put the BOP on notice of Defendants' alleged negligence. (Doc. 25, p. 7-8; Doc. 52, p. 2-3).

Second, Defendants assert that Plaintiff failed to meet the timeliness requirement of the FTCA because he did not afford the BOP at least 6 months' time to respond to his complaint prior to filing this lawsuit. The Court agrees with both of Defendants' arguments.

Defendants argue that Plaintiff did not meet the timeliness requirement under the FTCA because he did not allow the BOP 6 months to respond to his claim. (Doc. 25, p. 9; Doc. 52, p. 3). Under the FTCA, a claimant may meet the timeliness requirement in two ways. The claimant may either file his lawsuit after receiving a final denial from the agency in writing, or he may file his lawsuit six months after the submission of the claim when he does not receive any response from the agency.[14] *See* 28 U.S.C. § 2675(a). Here, Plaintiff submitted his claim to the North Central Regional Office on June 30, 2020. (Doc. 1, p. 9). Plaintiff subsequently filed this lawsuit on August 19, 2020. (Doc. 1). While Plaintiff alleges that he placed his grievance form in the mailbox, and that it was never received, this does not negate the fact that Plaintiff filed his lawsuit prematurely. At the time, Plaintiff could not have known that his grievance was never received because he did not wait for the Regional Office's Response. Plaintiff waited less than two months between the time he filed his claim with the North Central Regional Office and filing this

---

[14]     "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section . . . ." 28 U.S.C. § 2675(a).

lawsuit. Therefore, Plaintiff did not afford the BOP the 6 months response period as required under the FTCA. Because the timeliness requirement is strictly applied, Plaintiff has failed to meet the timeliness requirement of the FTCA. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106, 111-113 (1993)(holding that the FTCA requirement that administrative remedies be exhausted before filing suit was not satisfied by the receipt of agency rejection of the claim occurring after commencement of suit but before any substantial progress had taken place in the litigation). On this ground alone, Plaintiff did not properly exhaust his FTCA claim.

However, even if this were not the case, Plaintiff's administrative claim still does not meet the presentment requirement under the FTCA. *See* 28 U.S.C. § 2675. The presentment requirement ensures that the relevant agency has an opportunity to meaningfully consider and address a claimant's complaint prior to suit. *See Kanar*, 118 F.3d at 528. In order to meet the presentment requirement, Plaintiff's administrative claim must contain the following elements: (1) notification of the incident; (2) demand for a certain sum; (3) title or capacity of the person signing; and (4) evidence of the person's authority to represent the claimant. *Id.* Defendants assert that Plaintiff's administrative claim – contained in the document titled "Small Claims for Property Damage or Loss"- (as construed in Counts 2 and 4) fails to meet the notification element because it does not contain complaints about Plaintiff's alleged lack of medical care, Plaintiff's potential exposure to disease, or Defendants' alleged negligence surrounding Plaintiff's June 25th assault by a fellow inmate. (Doc. 52, p. 2-3). The Court agrees.

The Seventh Circuit construes the presentment requirement strictly. *See Smith v. United States*, Case No. 15-CV-33-NJR-PMF, 2016 WL 3165533, at * 7-8 (S.D. Ill. June 7, 2016) (aff'd, 678 Fed. Appx. 403 (7th Cir. 2017) (unpublished)). Despite *pro se* administrative complaint forms being entitled to generous construction, the Seventh Circuit has stated that the claim submitted to the agency must be "apparent to a legally sophisticated reader of the form" in order to charge the agency with notice of the claim. *Palay v. United States*, 349 F.3d 418, 425-426 (7th Cir. 2003). *See also Buechel v. United States*, 746 F.3d 753, 760 (7th Cir. 2014); *Murrey v. United States*, 73 F.3d 1448, 1452-53 (7th Cir. 1996)(stating ". . . and if the [form] was read the [plaintiff's] claim would leap out at the legally sophisticated reader."). This standard does not require an inmate to plead legal theories. *See Palay*, 349 F.3d at 425-426. However, a plaintiff's claim should at least be "implicit in the facts" conveyed to be considered as presented to the agency. *Id.* at 426.

In *Chronis*, the Seventh Circuit concluded that the plaintiff's "vague request for help in receiving restitution" fell short of the FTCA's presentment requirement of including a demand for a certain sum in the claim. 932 F.3d at 547. In this case, Plaintiff's document titled "Small Claims for Property Damage or Loss" does not contain any explicit allegations concerning potential exposure to disease. (Doc. 1, p. 9).  Nor could one infer from Plaintiff's description of the inmate attack any negligence on the part of prison officials in failing to prevent the attack. *Id.* When looking at the information Plaintiff supplied on the form, it is clear that Plaintiff understood he was pursuing a claim for property damage. *Id.* It is true that Plaintiff states that he was still "experiencing pain and suffering" from the attack on June 30, 2020 – five days after the incident. Thus, one might

infer that there was a lack of medical care following the attack. *Id.* Nevertheless this inference, would require a legally sophisticated reader to make a greater logical leap than one that was determined to be too far in *Chronis*. Therefore, Plaintiff has failed to meet the standard of notification under the presentment requirement of the FTCA. As such, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Count 2 and Count 4 of Plaintiff's Complaint.

Defendants next consider Plaintiff's failure to exhaust his administrative remedies under the PLRA for Count 3. (Doc. 25, p. 9-10; Doc. 52, p. 3-5). Defendants argue that the three remedy request forms that Plaintiff contends he submitted to the North Central Regional Office make no mention of inadequate medical treatment provided by Defendant Schneider after the alleged June 25, 2020, inmate attack; therefore, it did not provide the prison with sufficient notice under the PLRA. (Doc. 52, p. 4). Additionally, Defendants argue that Plaintiff failed to exhaust his administrative remedies under the PLRA because Plaintiff never presented a remedy request to the Central Office (the third and final level) of the BOP's administrative remedy process. (Doc. 25, p. 9). In response, Plaintiff stated that he had issues acquiring the proper forms to submit his grievances while he was in the SHU and that this prevented him from proceeding properly through the exhaustion requirements under the PLRA. (Doc. 50, p. 1). However, the Court has found inconsistencies in Plaintiff's testimony regarding the availability of his administrative remedies, allowing Defendants' second argument to ultimately succeed.

Defendants assert that after the alleged attack on June 25, 2020, Plaintiff never submitted a request to the institution or a remedy appeal to the Central Office. (Doc. 52,

p. 4). In support of this argument, Defendants note that the SENTRY report indicates that all remedy requests submitted after June 25, 2020, were sent directly to the second level of the remedy process – the North Central Regional Office. *Id.* Plaintiff alleges that he was unable to proceed through the full remedy process because the appropriate forms were unavailable to him. (Doc. 50, p. 1) While unavailability of administrative remedies is a defense Plaintiff can advance for his failure to exhaust, in this instance the Court has identified inconsistencies in Plaintiff's testimony that lead the Court to find Plaintiff's account unreliable.

Under the PLRA, Plaintiff was required to exhaust his administrative remedies prior to filing this lawsuit. *See Ford*, 362 F.3d at 398. The only exception to this requirement is when the administrative remedies are "unavailable." *Ross v. Blake*, 578 U.S. 632, 643 (2016). The Court in *Ross* emphasized that the mandatory language contained in the PLRA means a court may not excuse any other "special circumstances" for a Plaintiff's failure to exhaust that deviate from the statute's textual mandate. *Id.* at p. 640-642. *See also Booth v. Churner*, 532 U.S. 731, 741 (2001)(holding that prisoner's argument indicating that exhaustion was not necessary because the type of relief desired was not provided for in the administrative process could not be an exception to the requirement of exhaustion); *Porter v. Nussle*, 534 U.S. 516, 532 (2002)(holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Woodford v. Ngo*, 548 U.S. 81, 91 (2006)(finding that "[e]xhaustion is no longer left to the discretion of the district court").

In Plaintiff's Supplemental Response to Defendants' Motion for Summary Judgment, Plaintiff states that while being housed in the SHU "it is not always guaranteed to get the correct B-P forms to file." (Doc. 50, p. 1). Plaintiff explained that this was why his grievances were filed only at the regional level. *Id.* However, Plaintiff's initial complaint contradicts Plaintiff's argument about the unavailability of the appropriate forms. Plaintiff's initial complaint states: "I have been patiently waiting to get responses to my BP 9, 10 and 11. I still have not gotten any response. The incident in question happened June 25th of 2020. I filed BP 9, 10 and 11 in the month of July 2020, no response yet." (Doc. 1, p. 7).[15] Further, when Plaintiff was questioned about this inconsistency during the second hearing on Defendants' Motion, the Court found Plaintiff to be evasive because he avoided directly answering the question for over ten minutes. Plaintiff's evasiveness and inconsistency against Defendants' witnesses' consistent testimony regarding the availability of administrative remedies at FCI Greenville call for the Court to find in Defendants' favor. Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Count 3 of Plaintiff's Complaint.

---

[15]     Plaintiff could conceivably argue that a failure to respond to his grievances also made the administrative remedy process unavailable to him. However, Plaintiff cannot avail himself of this theory because he did not give the various levels sufficient time to respond prior to filing suit. The incident in question occurred on June 25, 2020. Plaintiff filed suit on August 19, 2020, a period of only **55 days**. At the institutional level, the Warden is permitted 20 calendar days to respond to an inmate's formal complaint filed on a BP9 form. *See* 28 C.F.R. § 542.18. If appealed to the Regional Office on a BP10 form, the Regional Director has 30 calendar days to respond. *Id.* If appealed to the Central Office after that on a BP11 form, the General Counsel has 40 calendar days to respond, which can be extended by up to 20 days for a total of 60 days. *Id.* Here, taking Plaintiff at face value that he was awaiting responses to the BP9, BP10, and BP11 forms that he filed in July 2020, Plaintiff jumped the gun in filing this lawsuit as the General Counsel had a total of **60 days** to respond to Plaintiff's appeal. Thus, Plaintiff cannot argue the administrative process was unavailable to him as he did not give the process enough time to resolve the matter prior to filing suit.

## CONCLUSION

Accordingly, the Court **GRANTS** the Motion for Summary Judgment as to Exhaustion of Administrative Remedies. (Doc. 25). The Court **DISMISSES** without prejudice for failure to exhaust administrative remedies Plaintiff's claims against Defendants Schneider and the United States of America. The Court **DIRECTS** the Clerk of Court to enter judgment reflecting the same at the conclusion of the case.

**IT IS SO ORDERED.**

**DATED:  March 24, 2023.**

Digitally signed by Judge Sison
Date: 2023.03.24 15:17:54 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**